FINCH, Judge
OPINION
This matter comes before the Court on defendants' joint motion to dismiss and plaintiffs' cross-motion for summary judgment.[1]
BACKGROUND
On February 6, 1991, St. Croix Storage Corp. d/b/a Sun Commercial Park ("St. Croix Storage") entered into a written lease agreement with McKenzie Construction, Inc. d/b/a V.I. Building Specialties ("McKenzie"). Pursuant to the terms of this lease agreement, St. Croix Storage let to McKenzie warehouse bay #21 of the Sun Commercial Park storage facility for a term of two years; in exchange, McKenzie agreed to pay $1,775 in monthly rent. The lease agreement expressly provided that the "[tjenant agrees that it will not store any materials, supplies and/or equipment outside the Leased Premises . . . ." Defs.' ex. A ¶ 24(f). The lease agreement also contained a merger and no-oral modification clause, which read as follows: "This lease contains the entire agreement between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties." Defs.' ex. A ¶ 21.
*96 Several months following the commencement of the lease, James King, President of McKenzie, placed lumber outside of his storage unit, bay #21. According to King, he entered into an oral agreement to store this lumber temporarily with Shirryl Hughes, manager of St. Croix Storage. Defendants dispute this assertion, alleging that no such oral agreement was reached, that the clear wording of the lease agreement is contrary to any such understanding, and that the placement of the lumber outside of bay #21 constituted a trespass.
On May 14,1991, following a series of discussions regarding the removal of this lumber, Jerry Tobin, a principal shareholder of Sun Storage Partners, L.P., instructed Hughes to place a "free lumber" sign at the entrance to St. Croix Storage. Aggrieved by the alleged loss of lumber that resulted, McKenzie brought suit against St. Croix Storage, Sun Storage Partners, L.P. and Tobin,[2] claiming illegal self-help eviction (count I); breach of bailment (count II); breach of contract (count III); and intentional infliction of emotional distress (count IV). In turn, defendants counterclaimed, alleging that they lost rental income because plaintiffs' lumber precluded access to certain storage units. Additionally, defendants filed a motion to dismiss. Plaintiffs, in response, have filed a cross-motion for summary judgment.
DISCUSSION
As a threshold matter, the Court considers the standards under which the parties' respective motions are to be reviewed. Defendants, as noted, have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Significantly, however, defendants in their motion rely upon materials outside the pleadings. As Rule 12(b) makes clear, where "on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and dis *97 posed of as provided in Rule 56." Rule 12(b) also counsels that in such circumstances "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The Court, persuaded that the parties have had such opportunity, will treat defendants' motion as a Fed. R. Civ. P. 56 motion for summary judgment.
The Court will grant a motion for summary judgment only if it is clear from the record "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," however. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Rather, where the moving party has demonstrated the absence of genuine issues, the nonmoving party must come forward with specific facts to show that there is indeed a disputed issue of material fact for trial. Id. In determining whether such genuine issues exist, the Court must resolve all reasonable doubts in favor of the nonmoving party. Id. at 255.
With these standards in mind, the Court turns to a review of the merits of the parties' respective motions.
A. Defendants' Motion for Summary Judgment
In reviewing defendants' motion, the Court initially addresses a non-substantive argument made by defendants in favor of summary judgment. It is defendants' position that plaintiffs have failed to comply with the requirements of V.I. Code Ann. tit. 5, § 533, which provides in relevant part that "no corporation may commence or maintain an action in any court if it has not paid its annual franchise tax last due . . . ." For this reason, defendants conclude, dismissal of this action is appropriate.
This is not defendants' first motion premised on plaintiffs' lack of compliance with § 533. On March 16,1995, defendants filed with this Court a joint motion to dismiss in which they alleged that McKenzie was not a corporation in good standing under § 533. Conceding defendants' point, plaintiffs on April 3,1995 requested sixty days to bring the corporation into compliance. Subsequently, on June 5, 1995, plaintiffs filed in this Court a
*98 Certification of Good Standing from the Virgin Islands Division of Corporations and Trademarks indicating that plaintiffs' franchise taxes had been paid. It was later revealed, in the instant motion, that the check tendered by plaintiff in payment of his franchise taxes was invalid.
Despite these inauspicious beginnings, it now appears that plaintiffs, as of May 28, 1996, have finally brought McKenzie into good standing — although admittedly, as defendants argue, not within the sixty days initially requested. In light of plaintiffs' compliance, and because there is no evidence that plaintiffs intentionally sought to disregard the mandate of § 533, the Court will allow this action to proceed. To do otherwise — to dismiss this action without prejudice and allow the plaintiffs to refile, as defendants request — would be to place form over substance.[3] This the Court will not to do.
The Court next considers defendants' substantive arguments in support of summary judgment. The first of these arguments goes to plaintiffs' breach of contract claim (count III). In count III, plaintiffs assert that the parties' written lease agreement was orally modified to permit the storage of lumber outside the leased property; defendants' subsequent distribution of this lumber, plaintiffs claim, constituted a breach of this oral agreement. In opposition, defendants contend that the introduction of evidence regarding any alleged oral agreement (1) is barred by the parol evidence rule; (2) contravenes the no-oral modification clause of the lease agreement; and (3) violates the statute of frauds. The Court treats these arguments in turn.
Pursuant to the parol evidence rule, "where there is a binding agreement. . . evidence of prior or contemporaneous agree- *99 merits or negotiations is not admissible in evidence to contradict a term of the writing." Restatement (Second) of Contracts § 215 (emphasis added); see V.I. Code Ann. tit. 1, § 4 (in the absence of law to the contrary, the rules of the restatements shall be the rules of decision in the courts of the Virgin Islands). In the instant case, however, plaintiffs seek to adduce evidence of an oral agreement made subsequent to the written lease agreement. Such subsequent modifications are not barred by the parol evidence rule. See E. Allan Farnsworth, Contracts § 7.6, at 492 (2d ed.) ("Because the parol evidence rule applies only to precontractual negotiations, it does not bar evidence of subsequent negotiations to show modification of the contract."). It is well-established that "[a]ny contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties." Arthur Linton Corbin, Corbin on Contracts § 574 (1st ed. 1960).
Nor is the oral modification alleged by plaintiffs necessarily precluded by the no-oral modification clause of the lease agreement. As this Court explained when faced with a mortgage agreement which specifically prohibited the making of any oral changes, "it is well-settled that any written contract, even one containing a modification clause, can be modified by a subsequent oral agreement between the parties. . . . "[4] Wiesner v. Trafton, 12 V.I. 315, 319 (D.C.V.I. 1975); see also Farnsworth, supra, at § 7.6 ("Can the parties, by inserting a no-oral modification clause, effectively permit only written modifications? The common law answer has been that they cannot.").
Notably, the Wiesner Court did recognize one instance where oral modification would be impermissible. The Court expressly noted that a subsequent oral agreement modifying a written contract will be unenforceable where the modifying agreement falls within the statute of frauds. Wiesner, 12 V.I. at 319. The Court *100 thus must consider defendants' third claim — whether the statute of frauds applies to the oral agreement alleged by plaintiffs.
The Second Restatement provides a clear test for determining whether a modification falls within the statute:
(1) For the purpose of determining whether the Statute of Frauds applies to a contract modifying but not rescinding a prior contract, the second contract is treated as containing the originally agreed terms as modified. . . .
(2) Where the second contract is unenforceable by virtue of the Statute of Frauds and there had been no material change of position in reliance on it, the prior contract is not modified.
Restatement (Second) of Contracts § 149. To simplify, then, the statute of frauds will apply to a modifying agreement if the terms of the original and modifying agreements, taken together, give rise to a contract that would fall within the statute.
Here, combining the various provisions of the written and oral agreements produces a lease agreement which authorizes the rental of certain storage space for a period of two years. The local statute of frauds, codified at V.I. Code Ann. tit. 28, § 241, provides as follows:
[e]xcept for a lease for a term not exceeding one year, no estate or interest in real property, and no trust or power over or concerning real property, or in any manner relating thereto, can be created, granted, assigned, transferred, surrendered, or declared, otherwise than —
(1) by operation of law; or
(2) by a deed of conveyance or other instrument in writing, signed by the person creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law.
The agreement at issue here, involving a lease for a term of two years, thus clearly falls within the statute, suggesting that the oral *101 modification is unenforceable. See SCM Land Co. v. Watkins & Faber, 732 P.2d 105, 108 (Utah 1987) ("[A] lease modification must also be in writing if the modification would add additional space to a lease that is within the statute of frauds.").
This does not end the Court's inquiry, however. As noted, § 149(2) of the Restatement provides that "[w]here the second contract is unenforceable by virtue of the Statute of Frauds and there had been no material change of position in reliance on it, the prior contract is not modified." (emphasis added). The Restatement explains further that:
[t]he change of position which prevents retraction of the waiver and reinstatement of the original terms may consist of action or forbearance, and may result from reliance either by the other party to the modifying agreement or by a beneficiary. But it must be a change of position in reliance on the modifying agreement, and it must be such that reinstatement of the original terms would be unjust.
Restatement (Second) of Contracts § 150 cmt. d. Modification by an agreement that is otherwise unenforceable will be permitted where the party seeking enforcement has detrimentally relied on the modifying agreement.
 In the instant case, the submissions of the parties suggest that plaintiffs, in storing their lumber at St. Croix Storage, may have made just such a material change of position. Because there exists a genuine issue of material fact as to the enforceability of the modifying agreement, the Court will not grant defendants' motion for summary judgment as it pertains to plaintiffs' breach of contract claim.[5]
The Court turns to defendants' third challenge — a challenge to count II of plaintiffs' complaint, plaintiffs' breach of bailment *102 claim. Defendants assert that there has been no bailment here and thus that plaintiffs cannot maintain an action for breach thereof.
At its most basic, a bailment is:
[a] delivery of goods or personal property, by one person (bailor) to another (bailee), in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust.
Black's Law Dictionary 141 (6th ed. 1990). "In order to create a bailment, possession of the subject property must pass from the bailor to the bailee. Generally, this takes the form of a delivery by the bailor and an acceptance by the bailee." Ventura v. Pearson, 17 V.I. 107, 115 (Terr. Ct. 1980). This degree of mutual acceptance, defendants contend, is not present in the instant case.
The Court must disagree. Pursuant to his affidavit, James King explained that "[i]n or about March of 1991,1 informed Ms. Hughes that I needed to move some lumber from where it was to the storage facility for a temporary period of time .... Ms Hughes agreed that I could move the lumber there. In about early April of 1991,1 moved the lumber to the storage facility and placed it back towards the fence as I had been instructed to do by Ms. Hughes." King aff. ¶¶ 4-5. Such description is adequate to establish a triable issue — a genuine issue of material fact — as to whether a bailment was indeed created. Summary judgment will not be granted on this ground.
The Court reaches the same conclusion with regard to defendants' final contention — that plaintiffs' claims must be dismissed because plaintiffs agreed to a waiver of their right to sue. Pursuant to paragraph 15 of the lease agreement,
[a]ll personal property belonging to Tenant, its servants, employees, suppliers, consignors, customers, licensees, located in or about the building or Demised Premises shall be there at sole risk of Tenant and neither Landlord *103 nor Landlord's agents shall be liable for the theft, loss or misappropriation thereof ....
Paragraph 15 is indeed a waiver provision of sorts. That said, the Court believes that while a waiver of a right to sue can shift the risk of a party's negligence, it will not do the same for a party's own willful, wanton, reckless or gross conduct. See W. Page Keeton et al., Prosser and Keeton on Torts § 68, at 484 (5th ed. 1984) (noting that while an express agreement exempting a defendant from liability for his negligence may be sustained, "such agreements generally are not construed to cover the more extreme forms of negligence, described as willful, wanton, reckless or gross, or to any conduct which constitutes an intentional tort"). Because there is evidence in the record that the defendants' conduct was intentional, the waiver provision will not excuse it. Further, to the extent that paragraph 15 of the lease agreement authorizes the defendants to use self-help in regaining possession of their property, such provision is void as against public policy. St. Thomas House, Inc. v. Barrows, 15 V.I. 435, 441 (Terr. Ct. 1979).
B. Plaintiffs' Cross-Motion for Summary Judgment
Having disposed of defendants' motion, the Court turns to plaintiffs' cross-motion for summary judgment. It is plaintiffs' position that defendants have failed to adduce any evidence of alleged loss of rental income as a result of plaintiffs' storage of lumber outside bay #21. Thus, plaintiffs assert, defendants' request for damages on this ground must fail.
The Court rejects this contention. The deposition of Shirryl Hughes, proffered by defendants in their response to plaintiffs' motion, indicates a genuine issue of material fact regarding the loss of rental income. As Hughes testified, "I had five units open on the west side of that building . . . which were not rented, and I could not rent them when the place looked like a mess like that and nonfunctional." Defs.' ex. A at 37. When asked whether "the sole reason you couldn't rent those units was because of Mr. McKenzie?," Hughes explained that "[i]t was a contributing factor." Id. at 38. Because defendants have adduced evidence adequate to survive summary judgment, plaintiffs' motion will be denied.
*104 CONCLUSION
For the reasons expressed above, the Court will deny both defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment. An appropriate order is attached.
DATED: February 3, 1997
ORDER
This matter comes before the Court on (1) defendants' joint motion to dismiss; (2) defendants' joint motion to deem their motion to dismiss conceded; and (3) plaintiffs' cross-motion for summary judgment. Having carefully considered the submissions of the parties, it is hereby
ORDERED that defendants' Motion to Dismiss, considered by this Court as a Fed. R. Civ. P. 56 motion for summary judgment, is DENIED; it is likewise
ORDERED that defendants' Motion to Deem Motion to Dismiss Conceded is DENIED. Further, it is
ORDERED that plaintiffs' Cross-Motion for Summary Judgment is DENIED.

 Defendants have also filed a joint motion to deem their motion to dismiss conceded. In their motion, defendants note that, pursuant to LRCi 7.1(f), where a party opposes a motion, "he shall file his response . . . within ten (10) days after service of the motion." Citing LRCi 7.1(j), defendants also note that failure to timely respond allows the court to "treat the motion as conceded and render whatever relief is asked for in the motion." Relying on these rules, defendants argue that because plaintiffs took twenty days to respond to the motion to dismiss, defendants' motion should be deemed conceded.
In making their argument, defendants have overlooked the recent amendments to the Local Rules. Under these amendments, a party is now given twenty days to oppose a motion to dismiss. See LRCi 7.1(f) (Feb. 19, 1996) ("The time period for any response and reply to a dispositive motion filed under Cjvjl Rule 12(b) and (c) shall be as provided in LRCi 56.[1]"); LRCi 56.1 (granting non-moving parties twenty days to respond to dispositive motions). Accordingly, because plaintiffs have not exceeded the time available to them, Rule 7.1(j) will not apply. Defendants' motion will be denied.

 The relationship between St. Croix Storage and Sun Storage Partners, L.P. ("Sun Storage") is somewhat unclear; it appears from plaintiffs' complaint that Sun Storage is a partnership that plaintiffs allege is so commingled in ownership as to be the alter ego of St. Croix Storage Corp.

 Defendants appear to believe that Keith Enterprises, Inc. v. Centurion Corp., 10 V.I. 206 (D.C.V.I. 1973), mandates dismissal where a plaintiff takes more than sixty days to comply with § 533. It is true that the Court in Keith gave plaintiff sixty days to comply, as did the Court in Maison La Crepe, Inc. v. Hilbress Assocs, Ltd., 20 V.I. 106, 108 n.1 (Terr. Ct. 1983). Nowhere, however, has it been expressly established that sixty days is the absolute limit within which compliance must be had. Indeed, the Keith Court held that where a corporation has not paid its franchise tax, the corporation must be allowed a "reasonable time" in which to become reinstated as a corporation in good standing before dismissal will be ordered — authorizing the reviewing court to exercise its discretion in determining whether compliance was timely made. 10 V.I. at 209.

 Nor is the Court persuaded that there must be a waiver of the no-oral modification clause distinct from the oral modification. Rather, it is adequate that the parties by their conduct indicate their intent to waive such clause. See Pepsi-Cola Bottling Co. v. Pepsico, 297 A.2d 28, 33 (Del. 1972) ("The prohibition against amendment except by written change may be waived or modified in the same way in which any other provision of a written agreement may be waived or modified, including a change in the provisions of the written agreement by the course of conduct of the parties.").

 It is for this same reason that the Court rejects defendants' contention that the alleged oral modification is void for lack of consideration. It is generally true, as defendants assert, that an antecedent contract will not be modified by a subsequent agreement that lacks consideration. As the Restatement makes clear, however, no consideration is necessary where "justice requires enforcement [of the modifying agreement] in view of material change of position in reliance on the [modification]." Restatement (Second) of Contracts § 89(c).